# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| RONALD A. THARRINGTON, JR., | ) | |
|     Plaintiff, | ) | Civil Action No. 7:17cv00090 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMONWEALTH OF VA., *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Ronald A. Tharrington, Jr., a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that several defendants violated his rights by: (1) committing medical malpractice; (2) being deliberately indifferent to Tharrington's serious medical needs; (3) breaching their contracts to adequately care for Tharrington; and (4) condoning his inadequate medical care. Tharrington seeks compensatory and punitive damages. After reviewing the record, I deny the motion to dismiss as to the Eighth Amendment claim against Dr. Moreno but grant the motions to dismiss as to all other claims.

## I.

On March 9, 2017, Tharrington filed his original complaint. On September 25, 2017, Tharrington filed an amended complaint that alleges the following.

On December 19, 2014, Tharrington submitted an emergency grievance regarding foot pain and instability. Defendant Nurse Toney ruled the grievance non-emergent and told Tharrington to submit a kite (*i.e.*, a written request). Tharrington alleges that Nurse Toney's determination that the emergency grievance was not an emergency constituted deliberate indifference and medical malpractice because Nurse Toney was aware that Tharrington had undergone surgery on his foot in July and was already scheduled to be seen by a doctor.

At 10:30 AM on December 23, 2014, Tharrington fell down half of a flight of stairs. Tharrington was brought to the medical department and Dr. Moreno examined him, noting an obvious sprain. Tharrington requested medication to deal with the pain, but Dr. Moreno refused,

stating that the previously prescribed medications were enough. Tharrington protested, telling Dr. Moreno that the medications were not working and he was seriously injured, but Dr. Moreno still denied his request. Tharrington alleges that Dr. Moreno's refusal to prescribe Tharrington with more medicine left Tharrington in perpetual pain and violated his Eighth Amendment rights.

In the evening of December 23, 2014, Tharrington submitted an emergency grievance requesting pain medication, because he had extreme pain in his neck, arm, and upper back. Defendant Nurse Harrison ruled the grievance a non-emergency and refused to give Tharrington any new medications. Tharrington alleges that Nurse Harrison was deliberately indifferent to his serious medical need and committed medical malpractice.

On the morning of December 24, 2014, Tharrington submitted an emergency grievance regarding ineffective medication and pain in his neck and upper back. He requested an x-ray and examination by a doctor because he was unable to move his head normally. Defendant Nurse Johnson ruled the grievance to be a non-emergency and refused to provide any new medication. Tharrington alleges that Nurse Johnson was deliberately indifferent to his serious medical need, committed medical malpractice, and breached her contract to provide him with adequate medical care.

On the night of December 24, 2014, Tharrington submitted another emergency grievance, stating that his neck, back and foot pain was unbearable and his blood pressure was elevated because of the pain. Nurse Toney called Dr. Moreno, who purportedly refused to send Tharrington for an x-ray or provide any additional medication. Tharrington alleges that Dr. Moreno was deliberately indifferent to his serious medical needs and committed medical malpractice.

On December 26, 2014, Tharrington submitted an emergency grievance regarding severe pain. That grievance was ignored, lost, or thrown away. Days later, Tharrington submitted a grievance regarding the December 26, 2014 grievance, and the grievance was ruled as "founded" by the regional administrator.[1] Tharrington alleges that the medical staff committed medical malpractice and were deliberately indifferent because they ignored, lost, or threw away his grievance. Also on December 26, Tharrington passed out and fell in the shower while trying to remove his t-shirt, allegedly because of the severe pain he was suffering. Tharrington saw Dr. Moreno but the doctor refused to send Tharrington to the emergency room to be examined and x-rayed. Dr. Moreno again refused to provide any additional pain medication. Tharrington alleges that Dr. Moreno's decision constituted medical malpractice and deliberate indifference to his serious medical needs.

On December 27, 2014 Tharrington submitted an emergency grievance stating that he had severe pain in his head and jaw, his fingers had a tingling burn sensation, and he had not been seen by a doctor or x-rayed after falling in the shower the night before. Defendant Nurse Lightfoot ruled the grievance as a non-emergency and refused to give any new pain medication. In her response to the grievance, Nurse Lightfoot stated that Tharrington was already being treated. Tharrington alleges that Nurse Lightfoot's decision to rule the grievance non-emergent violated his Eighth Amendment rights. Also on December 27, Tharrington submitted another emergency grievance detailing pain in his foot, neck, head, back, and jaw, nausea, and an inability to eat. Nurse Toney ruled the grievance non-emergent and responded that the doctor was aware of Tharrington's complaint and x-rays had been scheduled. Tharrington alleges that Nurse Toney's decision to rule the grievance a non-emergency was deliberate indifference to his serious medical needs and medical malpractice. Moreover, Tharrington asserts that Dr. Moreno

---

[1] The regional administrator directed staff to follow proper grievance procedure.

violated the Eighth Amendment and committed medical malpractice for refusing to prescribe additional medication.

On December 29, 2014, Dr. Moreno saw Tharrington but refused to provide additional pain medication, stating that Tharrington was maxed out on nonsteroidal anti-inflammatory drugs. Dr. Moreno also refused to increase Tharrington's tramadol dosage. Tharrington alleges that Dr. Moreno was punishing him for writing up Dr. Moreno previously. Tharrington asserts that Dr. Moreno was deliberately indifferent to his serious medical needs and committed medical malpractice. Later on December 29, Tharrington submitted an emergency grievance regarding severe pain and ineffective medication. Nurse Johnson ruled the grievance a non-emergency and refused to prescribe additional medication, call the doctor, or send him to an outside doctor or emergency room. Tharrington alleges that Nurse Johnson's decision was deliberate indifference and breach of contract.

On December 30, 2014, Tharrington submitted an emergency grievance regarding severe pain and needing to be seen by a doctor, specifically alleging that Dr. Moreno was indifferent to Tharrington's pain because he had written up Dr. Moreno previously. Nurse Johnson ruled the grievance a non-emergency and refused to prescribe additional pain medication. Tharrington avers that Nurse Johnson was deliberately indifferent to his serious medical needs and committed medical malpractice. Later on December 30, Tharrington submitted another emergency grievance regarding severe pain and high blood pressure. Nurse Jones ruled it a non-emergency and again refused to prescribe additional pain medication. Tharrington alleges that Nurse Jones violated his Eighth Amendment rights.

From December 31, 2014 to January 3, 2015, Tharrington submitted several more emergency grievances, all of which were ruled non-emergencies. Tharrington alleges that those

grievances should have been considered emergencies because he was subject to immediate risk of serious personal injury and irreparable harm.

On January 9, 2015, Tharrington was scheduled to see Dr. Moreno; however, after waiting from 9 A.M. to 1 P.M., Dr. Moreno allegedly refused to see Tharrington. Tharrington asked a correctional officer why Dr. Moreno was refusing to see him, and the correctional officer told Tharrington he did not know. Tharrington filed an informal complaint and an emergency grievance regarding Dr. Moreno's refusal to see him. Tharrington alleges that Dr. Moreno's actions constituted medical malpractice.

On January 14, 2015, Tharrington was seen by Dr. Martinez, who was allegedly frustrated that Dr. Moreno had not seen Tharrington on January 9. Dr. Martinez had no knowledge about the ordering of x-rays or requests for additional prescriptions of pain medications. Dr. Martinez told Tharrington that he would prescribe some medicine and refer him to Dr. Moreno. No medication was ultimately prescribed by Dr. Martinez.

On February 2, 2015, Tharrington was scheduled to be seen by Dr. Moreno. Tharrington waited all day to be seen by the doctor but was sent back to his housing unit. At 7 P.M. he was called back to the medical department. At 8 P.M., after the last patient had left, Tharrington was told by Correctional Officer Jones that Dr. Moreno refused to see Tharrington.[2] Tharrington confronted Dr. Moreno, and Dr. Moreno told Tharrington to ask Dr. Martinez. Tharrington told Dr. Moreno that he had seen Dr. Martinez and that Dr. Martinez did not know what was going on. Dr. Moreno still refused to see Tharrington on that day. Tharrington alleges that Dr. Moreno violated his Eighth Amendment rights and committed medical malpractice.

Tharrington continued submitting grievances regarding medical treatment, sick calls, and doctor's appointments. On March 19, 2015, the regional administrator upheld the level one

---

[2] On February 14, 2016, Tharrington procured a declaration from Officer Jones regarding the events of February 2, 2015.

5

decision regarding Tharrington's grievances alleging continuous inadequate health care. Tharrington contends that the regional administrator's decision violated his Eighth Amendment rights.

On March 23, 2015, Tharrington submitted a written request demanding to be seen by a doctor to discuss his pain management. He was seen by a nurse on March 26, 2015, with a doctor's appointment scheduled for April 3, 2015.

On April 4, 2015, Dr. Moreno saw Tharrington. Tharrington alleges that Dr. Moreno stated he had read the letter that Tharrington had sent to the Department of Health Professionals, and that Dr. Moreno argued with Tharrington about adequate healthcare. Tharrington alleges that he asked Dr. Moreno to "start over," but Dr. Moreno refused. Dr. Moreno then wrote Tharrington a prescription for a medication that Tharrington was already taking, and which Tharrington alleges was ineffective. Tharrington did not argue. Tharrington asserts that Dr. Moreno was deliberately indifferent to his serious medical needs and committed medical malpractice. However, Tharrington also acknowledges that defendants' constitutional violations ended on April 4, 2015, because he was finally "treated."

Tharrington requests compensatory damages: $1,000 per day for every day that he suffered in pain, $50,000 for the permanent nerve damage that occurred from the inadequate care, and $50,000 for when Dr. Moreno refused to have Tharrington sent to an outside emergency room or doctor after he fell in the shower on December 26, 2015. Tharrington also seeks $50,000 in punitive damages to deter the medical staff from future inadequate care.

## II.

### A. Rule 12(b)(6)

The defendants, Dr. Moreno, Nurse Harrison, Nurse Johnson, Nurse Carroll, Nurse Lightfoot, Nurse Stolfi, Nurse Monroe, Assistant Warden Davis, Regional Administrator of

6

Health Services Ray, Regional Administrator Offender Management Services Rodriguez, and Grievance Coordinator Meinhard argue that the complaint fails to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Furthermore, since Tharrington is proceeding in forma pauperis, I will analyze the remaining defendants, Nurse Toney and Nurse Jones, under the 12(b)(6) framework pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[3]

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[4] Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require

---

[3] Section 1915(e)(2)(B)(ii) allows for the dismissal of in forma pauperis actions that fail to state a claim on which relief may be granted.

[4] This opinion omits internal quotation marks, citations, and alterations unless noted.

heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Tharrington is proceeding *pro se* and, thus, entitled to a liberal construction of the pleading. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 90-95 (2007). However, "principles requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Id.* at 1276; *see Kalderon v. Finkelstein*, Case No. 08 Civ 9440, 2010 WL 3359473, at *1 n.1 (S.D.N.Y. Aug. 24, 2010) ("Plaintiff's complaint belongs to the everything-but-the-kitchen sink school of thought." "The complaint is extremely difficult to follow because of its extreme length and purported factual detail. The factual allegations are often repetitive, inconsistent, and contradicted by documents referenced in the complaint.").

### B. Relation Back Under Rule 15(c)

Under Rule 15(c), an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c). A new claim does not relate back when it "arises from a separate occurrence of both time and type." *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000).

### C. Statutes of Limitations

A statute of limitations argument is an affirmative defense and thus usually is not properly raised in a motion to dismiss pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 8(c); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, "if all facts necessary to the affirmative defense clearly appear on the face of the complaint," then a court may address the affirmative defense pursuant to Rule 12(b)(6). *Goodman*, 494 F.3d at 464.

First, Tharrington presents medical malpractice and breach of contract claims under state law. Virginia requires an inmate confined in a state or local correctional facility to bring a personal action relating to the conditions of his confinement within a year after the cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later. Va. Code § 8.01-243.2.

Second, Tharrington presents Eighth Amendment claims. Because Congress did not include time limits in the statute for filing a § 1983 action, such cases are governed by the statute of limitations of personal injury actions in the state where the tort allegedly occurred. *See Owens v. Okure*, 488 U.S. 235, 239 (1989). In addition, the state's tolling rules apply in calculating the timeliness of a § 1983 complaint. *Bd. of Regents v. Tomanio*, 466 U.S. 478 (1980).

In Virginia, the limitations period for general personal injury claims is two years. *See* Va. Code § 8.01-243(A). Thus, Tharrington had two years from the date when his § 1983 claims accrued to file them in a federal lawsuit. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011). "The question of when a cause of action accrues under 42 U.S.C. § 1983 remains one of federal law." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). It is well established that "a cause of action [under § 1983] accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.* In other words, the cause of action accrues when the plaintiff is "armed

with the facts about the harm done to him, and can protect himself" by investigating them further and working diligently to prepare his legal claims for litigation within the statutory filing period. *United States v. Kubrick*, 444 U.S. 111, 123 (1979).

### D. 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Notably, a plaintiff must sufficiently allege a defendant's personal act or omission leading to a deprivation of a federal right. *See Fisher v. Washington Metro. Area Transit Author.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Negligent deprivations are not actionable under § 1983. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995).

To state an Eighth Amendment claim for denial of medical care, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" that constitute "an unnecessary and wanton infliction of pain" or that are "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard. . . . Nevertheless, mere negligence or malpractice does not violate the eighth amendment.

*Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *Farmer*, 511 U.S. at 837 ("The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

In general, "questions of medical judgment are not subject to judicial review." *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *see also Calvert v. Sharp*, 748 F.2d 861, 862 n.2 (4th Cir. 1984) *abrogated on other grounds by West*, 487 U.S. at 42 (An inmate's mere "complaints about the quality of the medical treatment [] do not amount to deliberate indifference to serious medical needs, [which is] the constitutional test."); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990) ("Disagreements between an inmate and a physician over treatment do not state a claim under § 1983.").

Lastly, the Fourth Circuit recently held that, in order to assert a § 1983 claim for deliberate indifference under the continuing violation doctrine, "a plaintiff must (1) identify a series of acts or omissions demonstrating deliberate indifference to his serious medical needs; and (2) place one of more of these acts or omissions within the applicable statute of limitations for personal injury." *DePaola v. Clarke*, 884 F.3d 481, 487-88 (4th Cir. 2018).

### III. Discussion

#### A. State Law Claims

Tharrington's state law claims accrued from December 2014 to April 2015, and, according to Tharrington, he administratively exhausted the claims in 2015. Tharrington did not file the current action until 2017. More than a year has passed since the causes of action accrued and more than six months have passed since administrative exhaustion.[5] *See* Va. Code § 8.01-243.2. Therefore, I will grant the motions to dismiss Tharrington's state law claims as time-barred.

---

[5] Tharrington also fails to demonstrate that he is entitled to equitable tolling. *See Cruz v. Maypa*, 773 F.3d 138, 146-47 (4th Cir. 2014) (Equitable tolling "is appropriate in two circumstances: first, when the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant, and second, when extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.").

## B. Section 1983 Claims

At the threshold, claims of medical malpractice are not cognizable via § 1983. *See Estelle*, 429 U.S. at 105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Therefore, I will grant the motions to dismiss as to all medical malpractice claims to the extent they masquerade as § 1983 claims rather than claims under state law.

Meanwhile, Tharrington's deliberate indifference claims accrued from December 2014 to April 2015. The defendants argue that (1) Tharrington's December 2014 to February 2015 claims are time-barred because, despite knowing about what harm he suffered and whose omissions caused that harm by February 2015, Tharrington failed to file a lawsuit until March 2017; (2) the April 2015 claim is untimely because it was not brought until Tharrington amended his complaint in September 2017 and it does not relate back to the initial complaint; and (3) Tharrington's allegations fail to state a claim upon which relief can be granted. Tharrington argues that his claims are timely because: (1) the claims did not accrue until he had exhausted his administrative remedies, (2) the April 2015 claim relates back to his original complaint, and (3) the defendants continuously violated his rights.

Tharrington's contention that the cause of action accrued only after he had exhausted administrative remedies as required under 42 U.S.C. § 1997e(a) is incorrect. He became aware of the deliberate indifference claims on the dates that he allegedly received inadequate medical care; therefore, the statute of limitations began on those dates. *See Nasim*, 64 F.3d at 955; *Canady v. Hodges*, No. 7:17CV00464, 2018 WL 3146792, at *3-5 (W.D. Va. June 27, 2018) *appeal docketed,* No. 18-6885 (refusing to toll the limitations period during administrative exhaustion when plaintiff was put on inquiry notice of his claim).

Further, Tharrington asserts that he repeatedly notified medical personnel he required treatment for injuries and pain, but that, despite this notice and the ongoing nature of his suffering, the defendants either failed to provide treatment or condoned inadequate treatment until April 4, 2015. Specifically, Tharrington's initial complaint alleged deliberate indifference regarding the handling of grievances and Dr. Moreno's refusal to prescribe additional pain medications, order an x-ray, or send him to an outside emergency room or physician from December 2014 to February 2015. Tharrington's amended complaint asserts that medical staff continuously failed to properly treat him from December 2014 through April 4, 2015, and that the prison official defendants condoned the mistreatment of Tharrington by improperly denying Tharrington's grievance appeals. Although his original complaint did not include allegations between February 2 and April 4, 2015, and despite Tharrington's factually sparse allegations, I will liberally construe the amended complaint so that the April 2015 claim relates back to the claims in the initial complaint.[6] Therefore, under the continuous violation doctrine, I will assume that Tharrington's deliberate indifference claims are timely because they did not accrue until April 4, 2015, when Tharrington acknowledges that the violations ceased. I therefore turn to the claims against each defendant.

---

[6] In Tharrington's pleadings, he asserts the defendants were continuously deliberately indifferent until April 4, 2015:
  (1) The record will indicate via grievances that Dr. Moreno refused medical treatment to the plaintiff [on] February 2, 2015. Plaintiff exhausted his grievances to the highest level on March 30, 2015. Dr. Moreno at that time was still refusing the plaintiff medical treatment. This conduct continued until April 4, 2015. Therefore, Dr. Moreno engaged in the wrongful conduct until April 4, 2015.
  (2) Plaintiff's injury accrued continuously (severe pain) as the grievance record will also indicate, meeting the second condition.
  (3) Had the defendant [Dr. Moreno] provided the plaintiff with a doctor's visit between the dates of February 2, 2015 and April 4, 2015 the wrongful conduct would have ceased and the accrual date would have begun.
Pet'r's Resp. to the Mot. to Dismiss 3-4. It appears that Tharrington attempted to link his new March and April 2015 claims to the original complaint's February claims, and, by extension, relate the new claims back to the December 2014 and January 2015 allegations.

*1. Dr. Moreno*

A deliberate indifference claim consists of two components. "Objectively, the inmate's medical condition must be serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Subjectively, an official is deliberately indifferent to an inmate's serious medical needs only when he "subjectively knows of and disregards an excessive risk to inmate health or safety." *Id.* A medical need serious enough to give rise to a constitutional claim includes a condition for which lack of treatment perpetuates severe pain. *See Loe v. Armistead*, 582 F.2d 1291, 1295-96 (4th Cir. 1978); *Farmer*, 511 U.S. at 832-835. However, neither disagreement with a treatment plan nor general suffering of pain can sustain an Eighth Amendment claim. *See Harris v. Murray*, 761 F. Supp. 409, 414; *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. . . . To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). Instead, medical staff's pain management should generally be free from judicial interference except in the most extreme circumstances. *Snipes*, 95 F.3d at 592.

For the objective prong, Dr. Moreno had prescribed Tharrington with medicine, including painkillers. Tharrington also alleges that he repeatedly complained of severe pain related to surgery, falls, and other health issues, and that his pain and inability to function normally was obvious. Therefore, Tharrington satisfies the objective prong because he plausibly alleges that his pain qualifies as objectively serious.

For the subjective prong, Tharrington alleges that. Dr. Moreno had notice of his severe pain and need for further treatment since at least December 23, 2014, but that Dr. Moreno

14

intentionally mistreated him and was hostile toward Tharrington. Specifically, Dr. Moreno refused to prescribe additional medications, refused to see Tharrington despite a plethora of emergency grievances and other complaints, angrily confronted Tharrington over Tharrington reporting Dr. Moreno to an advisory board, and declined "starting over" with Tharrington. Additionally, Tharrington avers that he incurred further injury from Dr. Moreno's refusal to adequately treat him, including continuous pain, nausea, elevated blood pressure, and falls in the shower and down a stairwell.

Taking all of Tharrington's allegations as true and drawing all reasonable inferences in his favor, I conclude that he has plausibly alleged that Dr. Moreno was deliberately indifferent to his serious medical needs.[7] Therefore, I will deny the motion to dismiss as to the Eighth Amendment claims against Dr. Moreno.

### 2. Other Defendants

Tharrington asserts the remaining defendants, none of whom are physicians, also continuously violated his constitutional rights. Tharrington alleges: (1) the non-medical defendants, Assistant Warden Davis, Regional Administrator of Health Services Ray, Regional Administrator Offender Management Services Rodriguez, and Grievance Coordinator Meinhard, wrongly decided his grievance appeal and/or condoned the inadequacy of the medical staff's treatment of him; and (2) the nurse defendants were deliberately indifferent to his serious medical needs when they repeatedly downgraded his emergency grievances to non-emergencies, refused to prescribe additional medication, and did not send him to the outside emergency room

---

[7] Dr. Moreno also raises a qualified immunity defense, which requires the Court to ask whether the right was "clearly established" at the time it was violated. The knowing and intentional refusal to provide otherwise needed treatment was a clearly established violation of the Eighth Amendment at the time the violation occurred. *See Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. Dec. 18, 2014); *Iko v. Shreve*, 535 F.3d 225, 242–43 (4th Cir. 2008); *De-Lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir. 2003).

or doctor. However, I conclude that Tharrington's allegations against the remaining defendants fail to state a claim upon which relief may be granted.[8]

Prisoners do not have a constitutional right to access a state's grievance procedure or to have their grievances handled in any particular way. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Conrad v. Akers*, No. 7:10CV00560, 2011 WL 3847017, at *7 (W.D. Va. Aug. 30, 2011) (refusing to recognize a constitutional right in the grievance procedure when "grievances were shuffled from office to office with no permanent resolution to them"). Therefore, any alleged action by the defendants regarding the handling of grievances cannot sustain a § 1983 claim.

Additionally, correctional officials are entitled to rely on the expertise of their institution's medical staff and can only be held liable for inadequate medical treatment if: (1) the supervisory defendants failed promptly to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with prescribed treatment; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations. *Miltier*, 896 F.2d at 854; *see also Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). Non-medical prisoner administrators "cannot be liable for the medical staff's diagnostic decisions" and "cannot substitute their judgment for a medical professional's prescription." *Meloy*, 302 F.3d 845 at 849; *Swart v. Clarke*, No. 7:14CV00652, 2016 WL 411022, at *6 (W.D. Va. Feb. 1, 2016) ("It is not the function of prison administrators, or the court, to second guess the good faith treatment decisions of licensed physicians."). Furthermore, "non-physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 539 (3d Cir. 2017). If "a prisoner

---

[8] I note that Tharrington has not presented factual allegations against several named defendants. However, I see no need for a separate analysis.

is under the care of medical experts . . . a nonmedical official will generally be justified in believing that the prisoner is in capable hands." *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008)

Tharrington had unfettered access to the medical system. Thus, Tharrington's claim of supervisory liability appears to rest on the third theory, that the defendants condoned the prison physicians' constitutional violations. In his response to the motion to dismiss,[9] Tharrington asserts that "even though [the non-medical defendants] do not have any medical training they are intelligent people, who have families and possibly children that they have seen in pain. Therefore, for them to deny the grievances, condoned and made acceptable the unconstitutional treatment of the health care provider." Resp. to the Mot. to Dismiss 6, Dkt. No. 77. However, Tharrington's bare allegations—made in his brief rather than in the complaint no less—fail to state a claim of supervisory deliberate indifference.

First, his allegations against the non-medical defendants are conclusory and self-serving, and are thus not entitled to be taken as true, even if there were in his complaint. *Iqbal*, 556 U.S. at 678. Second, even if Tharrington could show that his treatment was deficient in some way, he fails to allege that the non-medical defendants knew the course of medical care provided to him placed him at an unreasonable risk of constitutional injury. *See Miltier*, 896 F.2d 854-55. From investigating Tharrington's complaints, the prison officials would have determined that Dr. Martinez and Dr. Moreno both saw Tharrington, with Dr. Moreno prescribing medication and regularly receiving updates from the medical staff regarding Tharrington's condition. Therefore, from the prison officials' perspective, Tharrington was already receiving treatment. Further, if the non-medical defendants had interfered with the medical staff's diagnostic decisions, the

---

[9] In the amended complaint, Tharrington does not mention any of the non-medical prison officials by name and does not specify any theory of liability: "On March 19, 2015, the regional administrator upheld the level one decision to continue to provide me with the inadequate healthcare that I had been complaining about. The decision to uphold the level one decision is a violation of my 8th amendment rights." Am. Compl. 11.

prison officials would have been second-guessing and replacing the decisions of the medical experts they are entitled to rely upon. *See Meloy*, 302 F.3d 845 at 849; *Swart*, 2016 WL 411022, at *6.

Taking Tharrington's properly pleaded allegations as true and drawing all reasonable inferences in his favor, he has failed to state a cognizable claim that the non-medical defendants violated his constitutional rights, because (1) he has no constitutional right to have his grievances handled in a particular way, and (2) he has not alleged that the nonmedical defendants directly interfered with treatment, were aware that the staff was providing grossly inadequate care, or tacitly authorized grossly inadequate care. *Adams*, 40 F.3d at 75; *Militier* 896 F.2d at 854. Therefore, I will grant the motion to dismiss the Eighth Amendment claims as to: Assistant Warden Davis, Regional Administrator Ray, Regional Administrator Rodriguez, and Grievance Coordinator Meinhard.

Turning to the nurse defendants, nurses act with deliberate indifference toward serious medical needs when they ignore obvious risks to an inmate's health in following a physician's orders. As part of the medical staff, "nurses may generally defer to instructions by physicians, 'but that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.'" *Badu v. Broadwell*, No. 5:11-CT-3192, 2013 WL 286262, at *9 (E.D.N.C. Jan. 24, 2013) (quoting *Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012)); *see also Greeno v. Daley* 414 F.3d 645, 655 (7th Cir. 2005) (asserting that "doggedly persisting in a course of treatment known to be ineffective" can violate the Eighth Amendment).

In *Badu*, the plaintiff alleged that he repeatedly complained to the nurses that he suffered severe symptoms due to inadequate treatment of his allergic condition, including throat inflammation and blood speckled tissues. *Badu*, 2013 WL 286262, at *10. For weeks, if not

18

months, the nurse defendants instructed the plaintiff to continue with the prescription regimen and did not timely raise the plaintiff's medical issues with the attending prison doctor or other medical supervisors. *Id.* The court concluded that, in the face of objectively observable symptoms, the nurse defendants' failure to inform the doctor or other medical supervisory staff and blind and unthinking reliance on an allegedly ineffective prescription regimen was deliberate indifference to the plaintiff's serious medical needs.

According to Tharrington's complaint and attachments, he saw Dr. Moreno in 2014 on December 23, 26, 29, and on April 4, 2015, and Dr. Martinez on January 14, 2015. Further, appointments were scheduled but Dr. Moreno allegedly refused to see Tharrington on January 9 and February 2, 2015. Meanwhile, Nurse Toney called Dr. Moreno in response to Tharrington's emergency grievance on December 24, 2014, and Nurse Toney informed Tharrington that the doctor was aware of his complaints on December 27, 2014. From the face of Tharrington's complaint, Tharrington was either directly seen by a doctor or a nurse liaised with a doctor on Tharrington's behalf consistently in December 2014 and January 2015, which is the period he complains about the nurses' actions.[10] Therefore, unlike in *Badu*, the nurse defendants did not blindly rely on an allegedly ineffective prescription regimen or fail to inform the treating doctor of the patient-inmate's condition—they notified the doctor multiple times of Tharrington's complaints, and informed Tharrington that they had done so.

Taking Tharrington's allegations as true and drawing all reasonable inferences in his favor, he fails to plausibly allege that (1) he was entitled to have the nurses handle his grievances in a particular way, or (2) the nurses blindly and unthinkingly deferred to the physician's orders despite an obvious likelihood of harm. Therefore, I will grant the motions to dismiss the Eighth

---

[10] Even though Tharrington pursued informal complaints against Dr. Moreno for the doctor's refusal to see Tharrington in February, Tharrington did not include any specific allegations against the nursing staff after January.

Amendment claims as to: Nurse Harrison, Nurse Johnson, Nurse Carroll, Nurse Lightfoot, Nurse Stolfi, and Nurse Monroe, and dismiss the Eighth Amendment claims against Nurse Toney and Nurse Jones pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.

For the reasons stated herein, I will deny the motion to dismiss as to the Eighth Amendment claim against Dr. Moreno and grant the motions to dismiss as to Assistant Warden Davis, Regional Administrator Ray, Regional Administrator Rodriguez, and Grievance Coordinator Meinhard, Nurse Harrison, Nurse Johnson, Nurse Carroll, Nurse Lightfoot, Nurse Stolfi, and Nurse Monroe. I will dismiss the claims against Nurse Toney and Nurse Jones.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to the parties.

**ENTER:** This  20th  day of September, 2018.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE