IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RONALD A. THARRINGTON, JR., | ) | |
|     Plaintiff, | ) | Civil Action No. 7:17cv00090 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMONWEALTH OF VA., *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Ronald A. Tharrington, Jr., a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983,[1] alleging that the defendant Dr. Dale Moreno acted with deliberate indifference to Tharrington's serious medical needs related to an injured foot and subsequent injuries, in violation of his rights under the Eighth Amendment. The matter is before me upon the parties' cross-motions for summary judgment supported by affidavits.[2] For the reasons set forth below, Dr. Moreno's motion for summary judgment will be granted and Tharrington's motion for summary judgment must be denied.

### I.     FACTUAL BACKGROUND[3]

In Tharrington's complaint as amended, he asserted that Dr. Moreno violated his constitutional rights by denying him appropriate medical care and being deliberately indifferent to

---

[1] I omit internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] I previously dismissed all claims against defendants Johnson, Stolfi, Toney, Harrison, Carroll, Jones, Lightfoot, Monroe, Davis, Ray, Rodriguez, and Meinhard. *See* Order (docket no. 80). Only the Eighth Amendment claim against Dr. Moreno remains.

[3] Any fact raised by defendant but not addressed by Tharrington will be treated as undisputed for purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2). I further note that "[t]he responsibility to comb through the record in search of facts relevant to summary judgment falls on the parties—not the court." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017); *see also* Fed. R. Civ. P. 56(c)(1), (3).

his medical needs, causing him to incur further injury and pain. After reviewing Dr. Moreno's motion to dismiss (docket no. 17), I determined that Tharrington had plausibly alleged that Dr. Moreno was deliberately indifferent to Tharrington's serious medical needs and denied the motion to dismiss on September 20, 2018 (docket no. 80). Following additional briefing by both sides, the cross-motions for summary judgment are ripe for decision.

As further set forth in my previous memorandum opinion, while an inmate at Buckingham Correctional Center, on December 19, 2014, Tharrington submitted an emergency grievance for additional medication stating he had significant foot pain and instability, stemming from foot surgery in July 2014. A nurse reviewed the emergency grievance and determined that it was non-emergent and scheduled Tharrington to be seen by Dr. Moreno. On December 23, 2014, Tharrington fell down half a flight of stairs and was then examined by Dr. Moreno on the same day. Dr. Moreno determined that Tharrington suffered a blunt trauma to his right foot resulting from the fall. At that point, Tharrington was already taking pain medication prescribed by another unnamed prison physician,[4] including Tramadol, Neurontin, and Naproxen.[5] Dr. Moreno, finding that Tharrington appeared comfortable and in no apparent distress when seated in a wheel chair, prepared a treatment plan that ordered Tharrington to continue on the previously prescribed medication with the addition of 400 mgs of Motrin, receive "bottom bunk, bottom tier, and bottom floor for one month," have x-rays taken of the right foot and ankle, and be issued crutches such

---

[4] I note that neither Tharrington nor Dr. Moreno identify the other prison physician. Tharrington's medical records indicate that he was prescribed certain pain medications on December 10, 2014 for a right foot injury. That prescription included a direction to taper the Tramadol dosage.

[5] The record indicates that Tramadol is a synthetic opioid prescribed for pain, Neurontin is prescribed for treatment of nerve pain, and Naproxen is a non-steroidal, anti-inflammatory drug ("NSAID") prescribed to treat pain.

that there was no weight bearing on the right foot and ankle until the x-ray results were back. *See* Moreno Decl. at 2. Tharrington protested, arguing that the pain medication, including the tapered Tramadol, was insufficient to manage his pain.

Over the next few days, Tharrington filed multiple emergency grievances requesting more pain medication because he had pain in his neck, arm, and upper back and complaining that his blood pressure was elevated due to the pain.[6] During that time, Tharrington was monitored by the nursing staff, provided with the prescribed pain medication, and kept weight off his ankle and foot. Dr. Moreno was notified of Tharrington's complaints on December 25, 2014, and ordered that Tharrington continue to take his medication, including the Tramadol at the tapered dose. Tharrington was also to continue being monitored in the prison's infirmary.

In his pleadings, Dr. Moreno stated that Tramadol is a synthetic opioid with the risk of addiction, heightened by chronic use, and is often abused for its euphoric effects. *See* Moreno Decl. at 2-3. Dr. Moreno avowed that it is important for physicians to monitor Tramadol use and "weigh the efficacy and availability of alternative pain relievers when treating patients for pain." *Id*. In Dr. Moreno's opinion, Tharrington was being adequately treated for his injury.

On December 26, 2014, Tharrington fell in the shower. Tharrington believes he passed out due to the severe pain he was suffering. Tharrington was examined by the nursing staff and Dr. Moreno was contacted. Dr. Moreno did not prescribe any additional pain medication, but instead ordered that Tharrington continue to be monitored by the nursing staff. On December 27, 2014, Tharrington submitted additional emergency grievances regarding pain in his foot, neck, head,

---

[6] One of the emergency grievances, #009912, was allegedly lost or thrown away. Tharrington submitted an appeal regarding #009912 and the warden/superintendent found the appeal to be "founded." In response, the warden/superintendent directed staff to follow proper grievance policy and procedure.

back, and jaw, as well as nausea and an inability to eat.  The nurses determined that the emergency grievances were not an emergency and that Tharrington was already being treated for the pain. The nurses scheduled Tharrington to see the doctor.

Dr. Moreno next saw Tharrington on December 29, 2014.  Dr. Moreno reviewed the nurses notes and conducted a physical examination.  Dr. Moreno concluded that Tharrington had right ankle pain, upper back/lower neck pain, and noted that Tharrington alleged paresthesia in the 4th and 5th fingers of his left hand.  Dr. Moreno prepared a new treatment plan, including ordering x-rays with flexion and extension and T spine series.  Dr. Moreno also adjusted the pain medication to include 650 mgs of Tylenol three times a day for 90 days, as needed for pain.  Tharrington asserts that his Tylenol prescription was decreased from 1000 mgs to 650 mgs, although the medical records do not indicate this decrease.  Tharrington requested that Dr. Moreno increase his Tramadol dosage, but Dr. Moreno refused.  Dr. Moreno also ordered a complete metabolic panel and that Tharrington's blood pressure be checked three times per week for two weeks.  Later that day, Tharrington submitted an additional emergency grievance regarding severe pain and ineffective medication, and the nurse declared it non-emergent.  The nurses continued to monitor Tharrington in the infirmary, check his blood pressure, and dispense his medication, pursuant to Dr. Moreno's treatment plan.

Between December 30, 2014 and January 3, 2015, Tharrington submitted additional emergency grievances for severe pain and ineffective medication that were all determined to be non-emergent.  In his December 30, 2014 emergency grievance, Tharrington asserted that Dr. Moreno was indifferent to Tharrington's pain because Tharrington had filed a formal complaint

4

against Dr. Moreno.[7] The nurses continued to monitor Tharrington, check his blood pressure, and dispense medication.

On January 2, 2015, Dr. Moreno was contacted following Tharrington's complaint of chest pain and pressure. Dr. Moreno adjusted his treatment plan such that Tharrington's blood pressure monitoring was increased to every shift and Tharrington was to continue his prescribed medication. Dr. Moreno did not believe the symptoms required an emergency room visit.

Tharrington had an appointment to see Dr. Moreno on January 9, 2015 but did not see him. Dr. Moreno claims that there was a mix up in the scheduling, set by his medical staff, and that Tharrington was in fact scheduled to see a doctor on January 14, 2015. Tharrington was upset following this encounter and believes Dr. Moreno was intentionally denying him treatment.[8] In the interim, Tharrington was seen by the nursing staff.

On January 14, 2015, Tharrington was examined by another prison physician, Dr. Martinez. Tharrington alleges that Dr. Martinez was unaware of the x-rays that Dr. Moreno ordered on December 29, 2014, and that Dr. Martinez did not prescribe Tharrington any

---

[7] To the extent it could be liberally construed that Tharrington makes a First Amendment claim of retaliation against Dr. Moreno, I conclude that it fails as Tharrington's allegations are conclusory and he has not demonstrated any adverse action. *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (summarily dismissing retaliation claim as insufficient because it consisted of merely conclusory allegations and no facts to show retaliatory motivation); *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) ("A plaintiff seeking to assert a § 1983 claim on the ground that he experienced government retaliation for his First Amendment-protected speech must establish three elements: (1) his speech was protected, (2) the alleged retaliatory action adversely affected his protected speech, and (3) a causal relationship between the protected speech and the retaliation."). Although Tharrington asserts that Dr. Moreno denied him medical treatment, the uncontroverted medical records demonstrate that he did receive medical treatment, albeit not the specific treatment he desired. Accordingly, I dismiss any retaliation claim without prejudice pursuant to 28 USC § 1915A(b)(1). I note that neither party addressed any claim of retaliation in their summary judgment motions.

[8] The medical records indicate that the appointment was originally scheduled for January 9, 2015.

5

medication. Despite Tharrington's argument to the contrary, Tharrington's uncontested medical records, Dr. Moreno's affidavit, and Tharrington's own pleadings indicate that Dr. Martinez did review the x-rays and prescribed Tharrington additional pain medication, including Neurontin and Tylenol.[9]

Following additional emergency grievances, Tharrington was next scheduled for a doctor's appointment on February 2, 2015. According to Tharrington, he did not see a doctor and was sent back to his housing unit after waiting all day. That evening, Tharrington returned to the medical department around 7 p.m. At 8 p.m., Tharrington was told that Dr. Moreno refused to perform an examination. Tharrington asked Correctional Officer Jones if he would get Dr. Moreno.[10] Tharrington then asked Dr. Moreno why he refused to examine him. According to Correctional Officer Jones' declaration, Dr. Moreno told Tharrington that he was to be seen by Dr. Martinez because Dr. Martinez was more familiar with Tharrington's pain management and Tharrington could "not doctor shop". *See* Compl. at 10. Tharrington protested, arguing that Dr. Martinez was not familiar with his situation and that Tharrington wanted Dr. Moreno to examine him.

According to Tharrington's medical records, he was next seen by Dr. Martinez on February 18, 2015. Dr. Martinez discontinued Naprosyn but added Indocin, a different NSAID, to treat Tharrington's pain.

On March 10, 2015, Tharrington again saw Dr. Moreno. Tharrington allegedly told Dr. Moreno that he had filed a complaint to the board of medicine and requested that Tharrington and

---

[9] In Tharrington's opposition to the motion for summary judgment (docket no. 89), he states "Dr. Martinez quoted [the x-ray] result to me on January 14, 2015 . . . ."

[10] On February 14, 2016, Tharrington procured a declaration from Officer Jones regarding the events of February 2, 2015.

Dr. Moreno "start over."[11] Dr. Moreno was not interested in having that conversation and kept the focus on the current treatment. Dr. Moreno and Tharrington discussed Tharrington's pain management. Tharrington expressed that his pain was getting worse but acknowledged that the Neurontin had resolved the pain in his 4th and 5th fingers. Dr. Moreno conducted an examination of Tharrington and noted that Tharrington alleged chronic upper back/lower neck pain with left upper extremity radiculopathy. To treat this, Dr. Moreno adjusted Tharrington's treatment plan to continue the current dose of Neurontin, increase the Indocin to 50 mg twice a day for 180 days, and add 705 mg of Robaxin, a muscle relaxant, three times a day for 90 days. Dr. Moreno also discontinued the order for Nortriptyline, an anti-depressant, as Tharrington refused to take it. Finally, Dr. Moreno ordered that a Quality Medical Care ("QMC") request be submitted for an electromyograph ("EMG") of Tharrington's left upper extremity.[12]

From March 10, 2015 to April 3, 2015, Tharrington submitted additional emergency grievances regarding medical treatment, sick calls, and doctor's appointments.

On April 3, 2015, Tharrington saw Dr. Moreno again for his right ankle/foot pain. At this meeting, Tharrington reported that his pain was unrelieved with current medication but that his back, neck, and shoulder pain were improved. Dr. Moreno conducted another exam and determined that Tharrington had right foot and ankle pain and ordered 750 mg of Disalcid, a NSAID for treatment of pain, twice a day for 180 days.

---

[11] Tharrington claims this conversation happened at the April 3 or 4, 2015 appointment, but medical records indicate that it occurred on March 10, 2015.

[12] The QMC request was approved and the EMG of his left upper extremity was performed on July 9, 2015, and Dr. Moreno asserts that it was "normal."

7

On April 28, 2015, Dr. Moreno saw Tharrington again because Tharrington claimed the medications were not working and that the Disalcid gave him heartburn. Dr. Moreno ordered 50 mg of Tramadol for pain, three times a day for 180 days.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The nonmoving party must "show that there is a genuine dispute of material fact . . . by offering sufficient proof in the form of admissible evidence." *Id.* (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Id.* "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

When faced with cross-motions for summary judgment, a court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). If the court finds that there is a genuine issue of material fact, both motions must be denied. However, "if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Trigo v. Travelers Commercial Ins. Co.*, 755 F.Supp.2d 749, 752 (W.D. Va.

2010). The district court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses from proceeding to trial.'" *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III. DISCUSSION

#### A. Eighth Amendment Deliberate Indifference Standard

"[A] prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth" in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Id*.

Under the first "objective" prong, plaintiffs must show that the alleged deprivation was "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. "To be 'sufficiently serious,' the deprivation must be 'extreme'—meaning that it poses a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions.'" *Scinto*, 841 F.3d at 225 (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)). In medical needs cases, plaintiffs must "demonstrate officials' deliberate indifference to a 'serious' medical need that has either 'been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).

Under the second "subjective" prong, "plaintiffs must show that prison officials acted with a 'sufficiently culpable state of mind.'" *Id*. (quoting *Farmer*, 511 U.S. at 834). "In conditions of

9

confinement cases, the requisite state of mind is deliberate indifference." *Id*. Plaintiffs must show that "the official knew of and disregarded an excessive risk to inmate health or safety," or, put differently, "that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and . . . drew that inference." *Id*. Deliberate indifference "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Id*. (quoting *Brice v. Va. Beach Corr. Ctr*., 58 F.3d 101, 105 (4th Cir. 1995)).

Plaintiffs "can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id*. (quoting *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015)). "Similarly, a prison official's failure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Id*. "However, even officials who acted with deliberate indifference may be 'free from liability if they responded reasonably to the risk.'" *Id*. (quoting *Farmer*, 511 U.S. at 844).

### B. Prong One – Objective Serious Medical Need

The first *Farmer* prong requires an inmate to "demonstrate the defendant's deliberate indifference to an objectively sufficiently serious medical need . . . that has either been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goodman v. Runion*, 676 F. App'x 156, 159 (4th Cir. 2017) (unpublished) (per curiam). Here, neither party contests that Tharrington had surgery in July 2014 on his right foot or that Tharrington was on a pain management plan for pain associated with his foot since at least December 10, 2014. I conclude that Tharrington's foot injury

10

and pain satisfies the requirement of a serious medical need as it was diagnosed by a physician and requires medical treatment.

### C. Prong Two – Subjective Deliberate Indifference

Under the second *Farmer* prong, Tharrington must make a showing that Dr. Moreno's "subjective mental state was that of deliberate indifference." *Hixson v. Hutcheson*, No. 5:18CV032, 2019 U.S. Dist. LEXIS 11326, 2019 WL 302516, at *4 (W.D. Va. Jan. 23, 2019). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (*overruled in part on other grounds by Farmer*, 511 U.S. at 825). "[A]n inadvertent failure to provide adequate medical care" does not amount to deliberate indifference. *Estelle*, 429 U.S. at 105. Doctors may not be liable under § 1983 for negligent diagnosis or treatment. *Johnson v. Quinones*, 145 F.3d 164, 168-69 (4th Cir. 1998). Tharrington must show that Dr. Moreno "actually knew of and disregarded a substantial risk of serious injury . . . or that [he] actually knew of and ignored a . . . serious need for medical care." *Goodman*, 676 F. App'x at 160 (quoting *Young v. City of Mt. Ranier*, 238 F.3d 567, 576 (4th Cir. 2001)).

Here, Tharrington does not offer facts that fault Dr. Moreno's course of treatment. The undisputed medical records demonstrate that following Tharrington's complaints, Dr. Moreno (or Dr. Martinez)[13] examined, evaluated, diagnosed, and treated Tharrington for foot, neck, and back

---

[13] Tharrington asserts that Dr. Moreno was deliberately indifferent when he refused to examine Tharrington on February 2, 2015. Where the delay in treatment of a serious medical need is the cause of the constitutional violation, the plaintiff must also demonstrate that the delayed medical treatment caused the plaintiff "substantial harm." *See Barley v. New River Valley Regional Jail Medical Dept.*, No. 7:16CV00280, 2017 U.S. Dist. LEXIS 30782, 2017 WL 888367, at *5 (W.D. Va. Mar. 6, 2017) (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)); *see also Webb v. Hamidullah*, 281 F. App'x 159, 166-67 & n.13 (4th Cir. 2008) (unpublished) (per curiam)

11

pain, nausea, and other ailments. The record indicates that Dr. Moreno continually changed treatment to meet the needs of Tharrington, altering the type of medication and the dosage strength based on Tharrington's complaints of ineffective medication. Dr. Moreno scheduled Tharrington for additional x-rays, ordered him to bottom bunk and bottom tier, and kept him in the medical infirmary for constant observation following the onset of certain symptoms. According to his medical judgment, Dr. Moreno adjusted his treatment plan at least five times to treat Tharrington's symptoms. Dr. Moreno based these treatment plans on Tharrington's complaints and examinations, Dr. Moreno's review of the x-rays, and various nurses' observation notes.

Moreover, Dr. Moreno relied on his medical judgment to continue to taper Tharrington's Tramadol prescription. Based on his expertise, Dr. Moreno believed that he had an obligation to try alternatives to opioids due to their addictive and harmful effects. Although Tharrington was eventually re-prescribed Tramadol on April 28, 2015, Dr. Moreno attempted to use other forms of pain relief that did not include opioids. The Eighth Amendment does not require Dr. Moreno to "keep [Tharrington] pain-free in the aftermath of proper medical treatment." *Snipes v. Detella*, 95 F.3d 586, 592 (7th Cir. 1996); *Chamberlain v. Clarke*, No. 7:14-cv-00013, 2014 U.S. Dist. LEXIS 70355, 2014 WL 2154183, at *2 (W.D. Va. May 22, 2014). Indeed, a prison physician's "decision to prescribe medication conservatively," in response to an inmate's complaints of pain, does not violate his constitutional rights. *Reyes v. Gardener*, 93 F. App'x 283, 285 (2d Cir. 2004). While Tharrington may disagree with Dr. Moreno's approach, "mere disagreement between an inmate and a physician over the inmate's proper medical care are not actionable absent exceptional

---

(explaining that where an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must demonstrate "that the delay resulted in substantial harm"). Here, Tharrington fails to provide any evidence that he suffered an injury or harm that was caused by the delay in the period between Dr. Moreno's refusal and his examination by Dr. Martinez.

12

circumstances." *Scinto*, 841 F.3d at 225; *see also Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished) (per curiam) (quoting *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Ultimately, Dr. Moreno's medical conclusions are not subject to judicial review. *Russell*, 528 F.2d at 319.

Tharrington's demand for additional pain medication is not grounds for finding deliberate indifference. His constitutional right to treatment does not compel prison officials to provide whatever treatment procedure the prisoner desires or believes he needs. *See Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) (finding "the essential test" for constitutionality required health treatment "is one of medical necessity and not simply that which may be considered merely desirable"); *see also Sprinkle v. Barksdale*, No. 7:08CV00430, 2009 U.S. Dist. LEXIS 121253, 2009 WL 5173408, at *6 (W.D. Va. Dec. 30, 2009) (concluding that the inmate "does not have a constitutional right to the prescribed dose or schedule of pain medication he desires or that another doctor, at another time and place, provided to him") (citing *Estelle*, 429 U.S. at 107).

On the record, Tharrington has failed to establish any material, disputed fact on which he could demonstrate that Dr. Moreno acted with deliberate indifference. I find no evidence of medical decisions so grossly incompetent or inadequate as to "shock the conscience." *Miltier*, 896 F.2d at 851. On summary judgment, Tharrington's bare speculation, without supporting medical evidence, of a need for an additional or different pain treatment is not sufficient to establish deliberate indifference. *See, e.g.*, *Kinard v. Holloway*, No. 7:14CV00230, 2015 U.S. Dist. LEXIS 128022, 2015 WL 5656982, at *8 (W.D. Va. Sept. 24, 2015) (finding inmate's failure to provide supporting evidence for an alternative treatment was insufficient to conclude a deliberate indifference claim); *Jones v. Pittsylvania County Jail*, No. 7:05CV00266, 2005 U.S. Dist. LEXIS 34984, 2005 WL 1035406, at *3 (W.D. Va. May 3, 2005) (finding inmate's failure to provide

evidence beyond his own assertions that his laceration required sutures or that any other treatment was necessary, defeated deliberate indifference claim). At most, Tharrington's claims are accusations that Dr. Moreno's treatment and evaluations were negligent, and negligent actions alone are not actionable under § 1983.[14]

In sum, Tharrington fails to identify evidence on which he could persuade a fact finder that Dr. Moreno knowingly gave him less pain medication than the doctor believed was medically warranted or that Dr. Moreno caused Tharrington harm by intentionally delaying offering Tharrington necessary medical services.

## IV.

For the reasons stated herein, I will grant Dr. Moreno's motion for summary judgment and deny Tharrington's motion for summary judgment.

The Clerk shall send a copy of this memorandum opinion and the accompanying order to the parties.

**ENTER:** This  24th  day of June, 2019.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[14] In light of concluding that Dr. Moreno will be granted summary judgment, I need not reach the question regarding qualified immunity.